```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
RHONDA D. LORA-SERRANO,               :
                                       :
                        Plaintiff,    :
                                       :
        -against-                      :
                                       :
CWA LOCAL 1032,                        :
                                       :
                        Defendant.    :
                                       :
------------------------------------------------------------- :
                                       x
```

FILED
IN CLERK'S OFFICE
US DISTRICT COURT

★ FEB 02 2012

BROOKLYN OFFICE

**MEMORANDUM & ORDER**

11-cv-1682 (ENV) (LB)

**VITALIANO, D.J.**

Plaintiff Rhonda D. Lora-Serrano ("Serrano") brings this action, pro se, against her former union, CWA Local 1032 ("the union"). In her amended complaint, plaintiff alleges violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12111 et seq. ("ADA"), the First Amendment, the Union Members' Bill of Rights of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411-412, the New York State Human Rights Law, N.Y. Exec. Law §§ 290-296, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107. The union now moves to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim. For the reasons stated below, defendant's motion is granted.

**I.    BACKGROUND**

The essential facts are drawn from Serrano's amended complaint; all reasonable inferences are construed in her favor. See Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007).

1

Serrano is a 53 year-old African-American woman. For over 17 years plaintiff was employed as a secretary by the Port Authority of New York & New Jersey ("the Port Authority") and, during that time, was a member of the union. Serrano has also been diagnosed with scleroderma, an autoimmune disease. Plaintiff alleges that on numerous occasions throughout her career, the Port Authority subjected her to adverse working conditions, such as too much work without adequate time to complete it, and transfers between departments and supervisors without notice. Plaintiff avers that white employees were not generally subjected to such conditions. She further alleges that, during her career at the Port Authority, she was often supervised by white employees with less experience than she had.

While the complaint recounts woe occurring over almost the entirety of her tenure with the Port Authority, Serrano does not name her employer as a defendant. Her complaint targets only the union.[1] It contains several vague statements that, over the years, Serrano felt "abandoned" and betrayed by the union with regard to her dissatisfaction at the Port Authority. Even on the most liberal reading, however, the only nonconclusory, fact-based allegations against the union pertain to plaintiff's suspension on September 18, 2008.[2]

In that regard, Serrano alleges that on the afternoon of September 18, 2008, a Port Authority manager, Jane Hegarty, came to plaintiff's workstation and asked her to come to a meeting in a nearby conference room. Plaintiff declined to accompany Hegarty unless a union representative was present. Hegarty allegedly threatened to publicly read from a piece of paper she was holding if Serrano did not come to the conference room, but then left her workstation for

---

[1] Serrano has sued the Port Authority separately in an action that is currently in discovery. (See Lora-Serrano v. Port Authority of New York & New Jersey, No. 11-cv-2968 (ENV) (LB), filed June 15, 2011.)

[2] Though much of the complaint's narrative is disjointed and difficult to decipher, the Court is sensitive to plaintiff's pro se status and its duty to interpret the complaint to "raise the strongest arguments" it suggests. Bertin v. U.S., 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

2

a short time. Plaintiff, concerned about what might happen in the conference room, attempted to contact the union shop steward, JoAnn Hilton, to ask her to accompany her to the meeting. Thereafter, Hegarty returned and informed plaintiff that Hilton had been contacted and would be present at the meeting. Serrano then followed Hegarty to a conference room where Hegarty allegedly told her that she was immediately suspended without pay and must leave the premises. According to plaintiff, just under one year later, on October 16, 2009, the Port Authority advised her that she was terminated effective immediately.

Between her suspension and termination, plaintiff states that a hearing took place on October 24, 2008 to appeal her suspension. Plaintiff was, she says, represented by a designee of the union. As plaintiff tells it, during its representation of her, the union "acted in collusion and conspiracy" against her, all at the direction of the Port Authority. Plaintiff claims the union signed a memorandum—without plaintiff's consent—which effectuated the suspension. Plaintiff further alleges that the union acted in concert with the Port Authority to prevent her from attending her appeal hearing and, indeed, acted "as a witness against" her in the proceeding. Plaintiff makes clear that she believes the union "engaged in and been party to [sic] the falsification of alleged official testimonies and legal documents" and "colluded and conspired" against her, falsifying records of plaintiff's presence at the October 2008 hearing. The complaint is silent as to when the results of the October 24, 2008 hearing were released. More critically, the complaint alleges no facts indicating that the union had any role in representing her in any way in relation to her termination in 2009, much less misrepresenting her.

Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") on October 27, 2009. She received a Right to Sue letter from the federal Equal Employment Opportunity Commission ("EEOC") on January 4, 2011. The filing of her original complaint in this action followed on April 4, 2011. The amended complaint was filed on May 6, 2011.

3

## II. STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. For purposes of Rule 12(b)(6), while a court must presume the truth of all factual allegations in the complaint, the court is not bound to accept the truth of legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986). Indeed, it is the plaintiff's factual allegations that are the heart of his pleading, as "a complaint need not pin plaintiff's claim for relief to a precise legal theory," nor does it need to provide "an exposition of his legal argument." Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011). Plaintiff's pleading must "give [the defendant] fair notice of what [plaintiff's] claims are and the grounds upon which they rest." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992 (2002). In analyzing well-pled facts, a court must draw all reasonable inferences in favor of the plaintiff. See Gorman, 488 F.3d at 591-92.

These standards apply with special force where, as here, a plaintiff is proceeding pro se. This Court must apply a standard more flexible than that used to evaluate pleadings submitted by counsel. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007). Plaintiff's submissions must thus be construed to "raise the strongest arguments they suggest." Bertin, 478 F.3d at 491.

## III. DISCUSSION

*A. Statutes of Limitations: Title VII, ADEA, and ADA*

Defendant does not contest its status as a "labor organization" for purposes of being subject to liability under Title VII, see 42 U.S.C. § 2000e-2(c), ADEA, see 29 U.S.C. § 623(c),

4

and ADA, see 42 U.S.C. §§ 12111, 12112. Plaintiff, however, "cannot assert claims against [the union] under these statutes unless [she] filed a complaint naming [the union] with the Equal Employment Opportunity Commission within 300 days of [the] alleged discrimination against [her]." Maldonando v. Local 803 I.B. of T. Health and Welfare Fund, No. 09-cv-3598, 2010 WL 2787841, at *3 (E.D.N.Y. July 12, 2010); see also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).

Reading the complaint in the light most favorable to plaintiff, she alleges the union discriminatorily breached its duty of fair representation to her on October 24, 2008, the day of the arbitration hearing. Correspondingly, only a charge of discrimination filed on or before August 20, 2009 would be timely. Serrano, however, filed her charge of discrimination with NYSDHR on October 27, 2009 at the earliest, making her administrative complaint over two months late.[3] Plaintiff alleges no facts to suggest the 300 day limitations period should run from a later date or that it should be tolled for any reason.

To be sure, plaintiff does allege she was terminated by the Port Authority on October 16, 2009. She does not, however, allege any facts from which one could infer the union had any involvement in representing her at any time after the adverse arbitration hearing that cascaded into employment termination. Since plaintiff names only the union as defendant in this action, the only relevant contentions would be those related to the union's alleged breach of duty within the limitations period, that is, with respect to its post-suspension hearing acts or omissions. All of her allegations, though, antedate that period. As a result, plaintiff's causes of action under Title VII, ADEA, and ADA are dismissed as untimely.

---

[3] Since New York is a so-called "deferral" state, the 300 day limitations period for filing a charge of discrimination runs back from plaintiff's filing with NYSDHR. Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325, 328 (2d Cir. 1999)

5

*B. Breach of Duty of Fair Representation*

The complaint can also be read to assert an independent claim for breach of the duty of fair representation. See Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010).[4] Such a claim, however, "must be filed within six months of the time when [the complainant union member] 'know[s] or reasonably should know that a breach of that duty has occurred.'" Heller v. Consol. Rail. Corp., 331 F. App'x 766, 768 (2d Cir. 2009) (citing Eatz v. DME Unit of Local Union No. 3, 794 F.2d 29, 33 (2d Cir. 1986)). Plainly, Serrano alleges no facts suggesting she knew of the union's alleged breach any later than October 24, 2008. This required her to file suit on or before April 24, 2009. Indeed, Serrano was terminated on October 16, 2009, well over a year before filing this action. Any putative breach of duty claim is, accordingly, dismissed as time-barred.[5]

*C. Claim under the LMRDA*

Serrano also purports to bring a claim for violation of LMRDA's "Union Members' Bill of Rights," 29 U.S.C. § 411. Section 411 guarantees that members of a union will have rights to equal participation in union activities, freedom of speech and assembly with respect to union events and issues, and protections relating to union dues and improper disciplinary action taken by the union against one of its members. Additionally, LMRDA creates a private cause of action

---

[4] "To establish that a union has breached its duty of fair representation, a union member must show: (1) that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith; and (2) a causal connection between the union's wrongful conduct and their injuries." Vaughn, 604 F.3d at 709.

[5] There is another ground supporting dismissal of the breach of duty claim. It is "well-settled that this Court lacks subject matter jurisdiction over duty of fair representation claims brought by" public employees. Gear v. Dept. of Education, No. 07 Civ. 11102, 2010 WL 5297850, at *3 (S.D.N.Y. Dec. 21, 2010); see also Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009). This conclusion turns on the fact that the Labor Management Relations Act and the National Labor Relations Act—the statutes giving rise to duty of fair representation claims—both exclude "political subdivisions," their employees, and labor unions representing those employees, from statutory coverage. Gear, 2010 WL 5297850, at *3.

to vindicate these rights. See 28 U.S.C. § 412. The "Bill of Rights is addressed to the internal affairs of the union, insuring to members equal rights and freedom of speech in the conduct of union affairs". Gilmore v. Local 295, Int'l Brotherhood of Teamsters, 798 F. Supp. 1030, 1040 (S.D.N.Y. 1992) (citing Abrams v. Carrier Corp., 434 F.2d 1234, 1250 (2d Cir. 1970)).

Plaintiff contends that the union violated her rights under the LMRDA by breaching its duty to represent her at the hearing following her suspension. "While LMRDA requires that a union member be afforded due process in union disciplinary proceedings, it does not provide protection against the union's breach of its duty to represent a member in arbitration hearings with the employer." Gilmore, 798 F. Supp. at 1042 (citing cases). Here, plaintiff's allegations are in the nature of a labor relations malpractice claim. They focus exclusively on the union's allegedly inadequate or corrupt representation during disciplinary proceedings commenced by plaintiff's employer. Under these circumstances, LMRDA does not provide plaintiff a cause of action. Jourdain v. Service Employees Int'l Union Local 1199, No. 09 Civ. 1942, 2010 WL 3069965, at *11 (S.D.N.Y. July 28, 2010). Her federal remedy, if any, would lie in a timely breach of duty to represent claim. That remedy, of course, is foreclosed here. (See supra, Part II.B.)

*D. First Amendment Claim*

Plaintiff also purports to bring a claim under the First Amendment. The Court construes this claim as a First Amendment retaliation claim brought under 42 U.S.C. § 1983. However, only state actors, not private parties such as a union (even one which represents public employees), are subject to suit under § 1983. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977 (1999); see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d 545, 551-52 (2d Cir. 2001) (holding that First Amendment retaliation claims under §1983 are available only against state actors). "As defendant is a private

7

union, not a state actor, plaintiff's First Amendment claim [is] dismissed." Burke v. CWA Local 1109, No. 07-cv-3595, 2009 WL 380 5517, at *5 (E.D.N.Y. Nov. 12, 2009).

### E. State Law Claims

Plaintiff's final set of claims seeks relief under the New York state and municipal human rights laws. Having already dismissed all of plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claim Serrano might arguably have alleged. 28 U.S.C. § 1367(c)(3); see also Marcus v. AT & T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); Edwards v. City of New York, No. 10-cv-01047, 2011 WL 5024721, at *6 (E.D.N.Y. Oct. 18, 2011).

### F. Leave to Amend Denied

Facially, the only claims plaintiff might be able to amend would be those brought under Title VII, ADA, or ADEA. While "leave [to amend] shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "where amendment would be futile, denial of leave . . . is proper." In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006). Since leave to amend these claims would fail on exhaustion grounds, such futility is present here.

"Exhaustion of administrative remedies . . . is a requirement under Title VII, the ADA, and the ADEA, and claims that were not raised in the administrative proceeding . . . are barred." Morales v. City of New York Dept. of Juvenile Justice, No. 10 Civ. 829, 2012 WL 180879, at *3 (S.D.N.Y. Jan. 23, 2012); see McPherson v. New York City Dept. of Educ., 457 F.3d 211, 213- 14 (2d Cir. 2006) (Title VII); Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (ADEA); J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ., 278 F.3d 119, 124 (2d Cir. 2002) (ADA). Comparing Serrano's administrative charge—which is attached to her complaint and properly before the Court on this motion, see Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991)—with the amended complaint, it

is clear that the already-determined defective allegations are congruent with the sum total of the administrative claims Serrano filed against the union. The administrative charge contains no allegations whatsoever of wrongdoing by the union which took place on or after December 31, 2008, the earliest date on which acts of discrimination would fall within the 300-day statutory time period preceding the charge. Van Zant, 80 F.3d at 712. Simply, any attempt to amend would be futile since any timely occurring acts, having not been included in the administrative charge she actually filed, are unexhausted and barred.

## IV. CONCLUSION

In accord with the foregoing, defendant's motion to dismiss is granted and the amended complaint is dismissed in its entirety. As to plaintiff's state law claims, dismissal is without prejudice. As to all other claims, dismissal is with prejudice.

The Clerk is ordered to enter judgment for defendant in accordance with this Memorandum and Order and to close the case.

**SO ORDERED**

Dated: Brooklyn, New York
February 1, 2012

ERIC N. VITALIANO
United States District Judge